## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

A PRIORI FAMILY OFFICE LLC and A
PRIORI GREENWICH HOLDINGS LLC,

*Plaintiffs*,

v.

VALLEY FORGE INSURANCE COMPANY,

*Defendant*.

Civil Action No.

3:23 CV 1477

NOVEMBER 8, 2023

## COMPLAINT

Plaintiffs A Priori Family Office LLC and A Priori Greenwich Holdings LLC (collectively "Plaintiffs") file this Complaint against Defendant Valley Forge Insurance Company ("Defendant").

## NATURE OF THE ACTION

1.      Plaintiffs bring this Complaint to recover insurance policy benefits and damages from Defendant, their property and commercial liability insurance carrier, based on its wholly unjustifiable and bad-faith refusal to cover certain water-related damage that arose at Plaintiffs' insured office after a storm in July 2023.

2.      The damage occurred after rainwater from the storm accumulated on a third-floor exterior terrace just outside Plaintiffs' office space and then infiltrated the building's interior through the terrace door.  The pooled water then spread through Plaintiffs' office, causing extensive damage to the flooring and interior fixtures.

3.      The water also infiltrated through the floor of Plaintiff's office space into another tenant's office on the second floor of the insured building, where it caused significant damage to

the tenant's furniture, wallpaper, and paint work.  The tenant subsequently sought to hold Plaintiffs liable for the damage.

4.     Fortunately, Plaintiffs had purchased property and liability insurance—at significant expense—to protect against precisely these types of unforeseeable and unpreventable losses, and they promptly reported claims (for both the property and liability coverages) to Defendant.

5.     Unfortunately, Defendant flatly denied coverage for Plaintiffs' claims, ostensibly based on a policy exclusion for "surface water" that plainly does not apply.  When Plaintiffs explained why that exclusion is inapplicable and asked Defendant to reconsider its determination, Defendant stood on its denial—this time ostensibly based on a completely different exclusion that also is inapplicable.  After Plaintiffs renewed their request for a redetermination, Defendant offered yet another excuse for its denial, which it had not previously cited or referenced in any way.

6.     Through its handling and denial of Plaintiffs' claims, Defendant has engaged in unfair, result-oriented claim settlement practices aimed at avoiding coverage by any means necessary.  Defendant thereby has breached the terms of Plaintiffs' policy, acted in bad faith, and violated the Connecticut Unfair Insurance Practices Act and Unfair Trade Practices Act.  Plaintiffs bring this action to hold Defendant accountable for its wrongful conduct.

**PARTIES**

7.     Plaintiff A Priori Family Office LLC is a limited liability company organized under Delaware law.  Its principal place of business is in Greenwich, Connecticut.

8.     Plaintiff A Priori Greenwich Holdings LLC is a limited liability company organized under Delaware law.  Its principal place of business is in Greenwich, Connecticut.

9.      Defendant Valley Forge Insurance Company is an insurance company organized under Pennsylvania law.  Its principal place of business is in Chicago, Illinois.  It is a licensed and approved insurance company in the State of Connecticut.

## JURISDICTION AND VENUE

10.     Jurisdiction is proper in this Court under 28 U.S.C. § 1332(a) because Plaintiffs and Defendant are citizens of different states and the amount in controversy exceeds $75,000 (exclusive of interest and costs).

11.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial portion of the events giving rise to Plaintiffs' causes of action occurred in this district.

## BACKGROUND

A.      **Plaintiffs and the Water Damage to their Greenwich Office**

12.     Plaintiffs are affiliated entities that provide investment management, advisory, and other related services.

13.     Plaintiffs' corporate headquarters is in Greenwich, Connecticut.  The office is on the third floor of a commercial building on Pickwick Plaza near downtown Greenwich.

14.     On or around July 9, 2023, a summer storm blew across Greenwich, generating heavy winds and rainfall.  July 9 was a Sunday, so Plaintiffs' office was empty.

15.     Water from the storm accumulated on an exterior rooftop terrace located just outside Plaintiffs' office.  At some point, the pooled water penetrated through the terrace door and into the building's interior.

16.     By the time the incident was discovered, it was too late.  The water had caused irreparable damage to the flooring and fixtures throughout Plaintiffs' office, which must be demolished, removed, and replaced.

17.     The estimated cost to repair the water damage is roughly $90,000.

18.     The water also caused significant, irreparable damage to a separate office on the second floor of the insured building, after infiltrating through the floor in Plaintiffs' office.

19.     The second-floor space is occupied by another tenant, which subsequently asserted that Plaintiffs are responsible for the costs of repairing the damage that the water caused to the furniture, wallpaper, and paint work in its office.

20.     The precise amount of the necessary repairs to the second-floor tenant's office is unknown, but on information and belief, the costs are estimated to be several thousands of dollars at least.

**B.     Plaintiffs' Property Insurance Policy**

21.     Plaintiffs sought insurance coverage for the water damage under a commercial property insurance policy that they had purchased from Defendant, with policy number B 6025109640 (the "Policy").

22.     Defendant is a subsidiary of CNA, which according to its website "is one of the largest U.S. commercial property and casualty insurance companies" with "more than 125 years of experience."

23.     The Policy has a coverage period of February 1, 2023 to February 1, 2024, and it specifically identifies Plaintiffs' Greenwich office as an insured location.

24.     Pursuant to the Policy's Businessowners Special Property Coverage Form, the Policy provides up to $3,000,000 in "Building" coverage for the Greenwich office location and up to $510,000 in "Business Personal Property" coverage.  The "Building" coverage applies (in relevant part) to "the buildings and structures" at the insured location, as well as to "Fixtures" and "Personal Property" (including "Floor coverings" and "Appliances").  The "Business

Personal Property" coverage applies (in relevant part) to personal property that is "located in or on the buildings" at the insured location, including "[p]roperty that [Plaintiffs] own that is used in [Plaintiffs'] business."

25.     The Policy is an "all risk" Policy.  It obligates Defendant to "pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from a Covered Cause of Loss," which means "risks of direct physical loss."

26.     The water damage to the flooring and fixtures in Plaintiffs' Greenwich office plainly falls within the Policy's coverage provisions and dollar limits.

27.     Moreover, the water damage does not fall within any of the Policy's exclusions or coverage limitations.

**C.     Defendant's Wrongful Coverage Denial**

28.     On July 10, 2023—the day after the occurrence—Plaintiffs noticed a claim for the water damage to Defendant and thereafter fully cooperated with Defendant, including by speaking with Defendant's claims adjuster on July 13, answering his questions, and providing photographs of the damage.

29.     However, Defendant flatly denied Plaintiffs' claim in an email dated July 20. Defendant's email explained the denial as follows:

> The water entered your building from under the terrace door as a result of the roof drain not being able to handle the volume of rain water that came down.  This water is classified as surface water.  Unfortunately, surface water is excluded under the policy.  We will not be able to extend coverage for this loss.

30.     Defendant then sent Plaintiffs a letter dated July 27, in which Defendant acknowledged that the damaged building is an insured property but nevertheless concluded that "the Policy does not respond to provide coverage for the claim presented."[1]

31.     Although Defendant referenced the Policy's Water Exclusion in the July 27 letter, Defendant did not explicitly state that its coverage denial was based on the Water Exclusion.

32.     In fact, Defendant did not provide any specific basis in the July 27 letter for its coverage denial or expressly identify the precise Policy provision on which the denial was based, and instead simply stated as follows:

> We have reviewed the policy and the facts surrounding the loss.  Per our discussion, and the photos you provided, you had advised that the water entered the building from under the terrace door.  Based on these facts, there is no coverage for the damages to your property.

33.     In the July 27 letter, Defendant also characterized Plaintiffs' claim as one for "flood damages," even though there was no "flood" (as that term is defined in the Policy), and Plaintiffs never described the occurrence as such.

34.     On August 10, Plaintiffs responded to the July 27 letter to explain why the water damage is covered by the Policy, and to "respectfully ask [Defendant] to reconsider its denial and agree to provide that coverage now."  Plaintiffs also specifically addressed the Policy's Water Exclusion and why it is inapplicable.

35.     In an email dated August 17, Defendant rejected Plaintiffs' request, stating that Plaintiffs "did not include any additional information as to the source of the water intrusion," and that "[w]ithout additional documentation we are unable to reverse our decision at this time."

---

[1] The first page of Defendant's letter actually is dated July 20.  But the remaining pages are dated July 27, and Plaintiffs received it by email on July 28.  It therefore appears that Defendant sent the letter on July 27, a week after originally denying Plaintiffs' claim.

36.     Defendant again did not provide any specific basis for its coverage denial or identify the precise Policy provision on which the denial was based.

37.     Plaintiffs responded to the August 17 email that same day to reiterate the facts of the damage, and to ask that Defendant "specifically explain[] what 'additional information' [it] needs (and why)."  Plaintiffs emphasized that the facts of the damage are "straightforward and not subject to interpretation," such that Defendant should not need "additional information" to reconsider its coverage denial.

38.     Defendant then emailed the following response on August 23:

> Per the conversation with the insured, the water had entered the building from under the exterior door.  This is not a covered cause of loss.  The policy does not cover for damage from water intrusion unless there was an opening in the building from a loss insured.

39.     Yet again, Defendant did not provide any specific basis for its coverage denial or identify the precise Policy provision on which the denial was based.

40.     However, the language of the August 23 email suggests that Defendant, despite originally appearing to base its coverage denial on the Water Exclusion, now was denying coverage based on the Policy's Rain Exclusion—though Plaintiffs have no way of knowing this for sure given that Defendant still has never cited a specific Policy provision to support the denial.

41.     On August 28, Plaintiffs sent Defendant another letter to explain why the Rain Exclusion is inapplicable, and to "again urge [Defendant] to withdraw its denial and provide the 'all risk' coverage that its insureds paid for and reasonably expected would be available for unforeseeable and purely fortuitous events like the one at issue here."

42.     Defendant responded to Plaintiffs' letter with another email that simply stated, "if you have additional information for us to consider then please provide it . . . and we will review."

43.     When Plaintiffs later renewed their request for a redetermination, Defendant appeared to invoke the Rain Exclusion yet again, without making any effort to address Plaintiffs' position as to why that Exclusion is inapplicable (as set forth in their August 28 letter).

44.     Defendant also again referenced Plaintiffs' claim as an excluded "claim for flood," even though "flood" is a defined term in the Policy that means "inundation of normally dry *land* areas" and therefore is inapplicable here (as Plaintiffs noted in their August 10 letter).

45.     In addition, Defendant raised a completely new excuse for denying coverage, asserting—for the first time—that Plaintiffs' claim is excluded because the Policy "does not carry the "Broadened wind coverage endorsement."  This excuse makes no sense, as Plaintiffs are not seeking "wind coverage" and never have.

46.     Defendant thus has obstinately refused to cover Plaintiffs' claim while steadfastly maintaining that it needs "additional information" to reconsider its denial, even though Plaintiffs already have presented all the relevant facts, which are straightforward and plainly show that the claim falls within the Policy's coverage provisions.

47.     Moreover, Defendant has stood on its denial despite never attempting to visit and inspect the insured building or properly assess the nature and extent of the damage thereto. Defendant also never clarified what "additional information" it purportedly needs to reconsider its denial.

48.     The precise basis for Defendant's denial also remains unclear.  Though what is clear is that Defendant has shifted the justification for its denial over time, as it searched for any possible excuse it could use to avoid providing the insurance coverage that Plaintiffs had paid substantial premiums for and reasonably expected would be available under the circumstances.

49.     Throughout its so-called "investigation," Defendant was largely non-responsive and uncooperative with Plaintiffs.  Defendant had a single perfunctory phone call with Plaintiffs, and aside from requesting photos evidencing the water damage, Defendant made virtually no effort to substantively engage with Plaintiffs or support its premium-paying insureds in any way.

**D.      The Liability Claim and Defendant's Second Wrongful Coverage Denial**

50.     Meanwhile, Plaintiffs reported a claim for the water damage to the second-floor tenant's office under the Policy's Businessowners Liability Coverage Form, which provides up to $1,000,000 in coverage for each "occurrence" that causes property damage for which the insureds "become[] legally obligated to pay as damages."  The Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

51.     The water damage to the second-floor office in the insured building plainly resulted from an "occurrence" and falls within the Policy's coverage provisions and dollar limits.

52.     Moreover, the water damage to the second-floor office does not fall within any of the Policy's exclusions or coverage limitations.

53.     Even so, Defendant flatly denied coverage for the liability claim immediately when Plaintiffs reported it (which they did by phone on October 3).

54.     Defendant denied the liability claim verbally and has made no effort to memorialize the denial in writing.

55.     Defendant presumably denied the liability claim based on the Policy's Water Exclusion and/or Rain Exclusion.  However, those Exclusions appear only in the Policy's Businessowners Special Property Coverage Form and do not even apply to the Businessowners Liability Coverage Form.

56.     Defendant's reliance on the Water and/or Rain Exclusions for denying the liability claim directly conflicts with the facts and is wholly unjustifiable.

57.     And just as with Plaintiffs' property claim, Defendant made no effort to properly investigate the liability claim or assess the nature and extent of the damage to the second-floor office.  Indeed, Defendant did not even pretend to investigate or fairly consider the liability claim.

**E.     Plaintiffs' Damages**

58.     Through its wrongful, bad-faith investigation and denial of Plaintiffs' property damage claim, Defendant has deprived Plaintiffs of roughly $90,000 in lost policy benefits, which reflects the amount of the necessary costs to repair the water damage that occurred at Plaintiffs' insured property in Greenwich after the July storm.

59.     Through its wrongful, bad-faith investigation and denial of Plaintiffs' liability claim, Defendant has deprived Plaintiffs of additional lost policy benefits in the form of lost coverage for the necessary costs to repair the water damage that occurred in the second-floor tenant's office after the July storm.

60.     Defendant's wrongful, bad-faith investigation and denials of Plaintiffs' claims also have forced Plaintiffs to incur attorney fees and costs in pursuit of the coverage that they are entitled to receive under the Policy, and which they otherwise would not have incurred had Defendant honored its obligations and agreed to cover Plaintiffs' claims.

61.     Plaintiffs have made every effort to cooperate with Defendant in good faith, and on numerous occasions have respectfully requested that Defendant reconsider its denial.  But Defendant has refused to reciprocate Plaintiffs' good faith and ultimately left them with no choice but to seek assistance from the Court.

## COUNT 1
## BREACH OF CONTRACT

62.     Plaintiffs hereby incorporate the foregoing paragraphs as if fully set forth herein.

63.     As detailed above, Plaintiffs' claims for property insurance coverage for the water damage that resulted after the pooled rainwater on the third-floor exterior terrace infiltrated Plaintiffs' office space through the terrace door are covered by the Policy and do not fall within any of the Policy's exclusions or coverage limitations.

64.     By denying Plaintiffs' claims, Defendant has breached the Policy, and thereby has caused Plaintiffs to suffer substantial damages (the exact amount of which will be shown at trial).

65.     As a result of Defendant's breaches of the Policy, Plaintiffs are entitled to recover their actual damages, including but not limited to their out-of-pocket, reliance, and/or benefit-of-the-bargain damages.

## COUNT 2
## BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

66.     Plaintiffs hereby incorporates the foregoing paragraphs as if fully set forth herein.

67.     Under Connecticut law, Defendant's common law duties under the Policy include a duty of good faith and fair dealing.

68.     By denying Plaintiffs' claims for coverage under the Policy in the manner detailed above—including through its vague and ambiguous explanations for the denials, its apparent reliance on entirely different and previously unreferenced exclusions to justify its denial after Plaintiffs requested that it reconsider its determination, its refusal to consider Plaintiffs' reconsideration request in good faith, its general non-responsiveness and lack of cooperation, its failure to physically inspect the insured property or otherwise properly assess the nature and extent of the damages thereto, and its general indifference towards and failure to support its

insureds—Defendant has breached its duty of good faith and fair dealing, and thereby has caused Plaintiffs to suffer substantial damages (the exact amount of which will be shown at trial).

69.     As a result of Defendant's breach of its duty of good faith and fair dealing, Plaintiffs are entitled to recover their actual damages, including but not limited to their out-of-pocket, reliance, and/or benefit-of-the-bargain damages.

70.     Defendant's breach of its duty of good faith and fair dealing also entitles Plaintiffs to recover their reasonable attorney fees and expenses.

**COUNT 3**
**VIOLATIONS OF THE CONNECTICUT UNFAIR TRADE PRACTICES ACT AND THE CONNECTICUT UNFAIR INSURANCE PRACTICES ACT**

71.     Plaintiffs hereby incorporate the foregoing paragraphs as if fully set forth herein.

72.     Defendant is in the business of providing insurance, including to businesses in Connecticut.

73.     Defendant's business is consumer-oriented in nature and occurs within the trade and commerce of Connecticut.

74.     Although Defendant purported to provide coverage to Plaintiffs through the Policy for property damage such as the water damage described herein, that coverage is illusory.

75.     Defendant's conduct in purporting to provide coverage but then refusing to provide it constitutes unfair competition and an unfair and deceptive act and practice under Connecticut law.

76.     By effectively inducing Connecticut consumers to purchase its insurance products—through its promises of coverage that it has no intention of providing—Defendant has acted oppressively and unscrupulously, and thereby has caused substantial injury to businesses in Connecticut.

77.     By denying Plaintiffs' claims for coverage under the Policy in the manner detailed above, Defendant also has engaged in unfair claim settlement practices, in violation of Chapters 704 and 735a of the Connecticut General Statutes, including but not limited to Sections 38a-816(6) and 42-110b, and thereby has caused Plaintiffs to suffer substantial damages (the exact amount of which will be shown at trial).

78.     The only benefits of Defendant's practices, as alleged herein, are to Defendant's own commercial interests.

79.     Defendant's violations of Chapters 704 and 735a entitle Plaintiffs to recover all their actual damages, plus their reasonable attorney fees and expenses.

**COUNT 4**
**REQUEST FOR DECLARATORY JUDGMENT**

80.     Plaintiffs hereby incorporates the foregoing paragraphs as if fully set forth herein.

81.     An actual controversy exists between the parties concerning Defendant's obligation to provide coverage under the Policy for the water damage described herein.  In accordance with 28 U.S.C. § 2201, Plaintiffs seek a declaratory judgment to resolve this dispute and confirm the parties' respective rights and obligations.

**CONDITIONS PRECEDENT**

82.     All conditions precedent to recovery of the damages sought herein have been performed or have occurred.

**JURY DEMAND**

83.     Plaintiffs hereby demand a jury trial on all issues so triable under applicable law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that, upon a final hearing of this cause, the Court enter a judgment for Plaintiffs and against Defendant that awards to Plaintiffs all

compensatory damages sought herein; reasonable attorney fees and costs of suit; pre- and post-

judgment interest as provided by law; and such other and further relief to which Plaintiffs may be

justly entitled.

Respectfully submitted,

THE PLAINTIFFS,
A PRIORI FAMILY OFFICE LLC and A
PRIORI GREENWICH HOLDINGS LLC

*/s/ Clayton N. Matheson*
Clayton N. Matheson
clayton@hfgtx.com
*Pro Hac Vice Application Forthcoming*
HORNBERGER FULLER GARZA &
COHEN INC.
7373 Broadway, Suite 300
San Antonio, Texas 78209
Tel.: 210-271-1700
Fax: 210-271-1730

/s/ John J. Radshaw III
jjr@jjr-esq.com
JOHN J. RADSHAW III, ESQ.
65 Trumbull Street, 2d Floor
New Haven, Connecticut 06510
Tel.: 203-654-9695
Fax: 203-721-6182

***Counsel for Plaintiffs***