UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| A PRIORI FAMILY OFFICE LLC *and* A PRIORI GREENWICH HOLDINGS LLC,     *Plaintiffs*, <br><br> v. <br><br> VALLEY FORGE INSURANCE COMPANY,     *Defendant*. | No. 3:23-cv-1477 (KAD) |

**MEMORANDUM OF DECISION RE: MOTIONS FOR SUMMARY JUDGMENT [DOCS. #45, 46][1]**

Kari A. Dooley, United States District Judge

This coverage dispute arises out of Defendant Valley Forge Insurance Company's (Valley Forge) denial of coverage under an all-risk commercial property policy issued to Plaintiffs A Priori Family Office LLC and A Priori Greenwich Holdings LLC (together, A Priori). A Priori, which maintains an office on the third floor of a commercial building in Greenwich, Connecticut, discovered water had seeped into and damaged their office after a storm and heavy rain. A Priori filed an insurance claim with Valley Forge but Valley Forge denied coverage. This action followed. Before the Court are the parties' cross-motions for summary judgment.

For the following reasons, Valley Forge's motion for summary judgement is granted in part and denied in part. A Priori's cross-motion for summary judgment is granted.

**FACTS[2]**

---

[1] This matter was transferred to the undersigned on January 17, 2025. The Court has reviewed the parties' submission and reviewed the transcript of the oral argument held before Judge Meyer on October 29, 2024.

[2] The facts are drawn from the parties Rule 56(a) statements and exhibits appended to the cross-motions for summary judgment. They are, in large measure, not in dispute. Where factual disagreements persist, those disagreements are noted in the decision.

1

In late 2022, A Priori, an investment management firm, purchased a $3 million commercial property insurance policy underwritten by Valley Forge. *See* Doc. #52-2 at 7, 182.[3] As an "all-risk" policy, it provides coverage for the "risks of direct physical loss unless the loss is" included under the policy's "Exclusions" section, the "Limitations" section, or is otherwise excluded or limited by other provisions in the policy. Doc. #52-2 at 33; Doc. #51-1 at 1 (¶ 1); *see also* Doc. #52-1 at 1 (¶ 1).

A Priori's office is located on the third floor of a commercial building in Greenwich and includes a terrace. Doc. #51-1 at 1 (¶ 2). On Sunday, July 9, 2023, a storm hit the town. *Id.* at 2 (¶ 4). The next day, A Priori discovered that water had entered its office and caused damage to the interior flooring and fixtures. *Id.* at 2 (¶ 5). A Priori submitted a claim for the water damage under the policy's Businessowners Special Property Coverage Form. Doc. #52-1 at 4 (¶ 8); *see also* 51-1 at 3 (¶ 11). Michael Allen, a Valley Forge claims specialist, was assigned to the claim and collected information from Fuyuo Nagayama, A Priori's Director of Business Development and Associate Counsel. *See* Doc. #52-1 at 4 (¶¶ 8-9).

After some back-and-forth between Allen and Nagayama, Valley Forge denied coverage for A Priori's claim. Doc. #51-1 at 5 (¶ 19); Doc. #52-1 at 7-8 (¶ 20). The letter denying coverage recapped Valley Forge's understanding of what had happened: that "water had flooded the roof" and that, as a result of heavy rainfall, "the roof drain was not able to handle the volume and flooded the roof terrace" and that the water "came into the building from under the terrace door and caused damage." Doc. #52-4 at 5-6. The letter then recited the policy's Water Exclusion, which precludes coverage "for loss or damage caused directly or indirectly by . . . 'Flood,' surface water, waves, tides, tidal waves, overflow of any body of water, or their

---

[3] The policy was effective from February 1, 2023 through February 1, 2024. *Id.* at 5.

spray, all whether driven by wind or not." *Id.* at 6; *see also* Doc. #52-2 at 34-35. Valley Forge explained that, based on that Exclusion and because the water entered the building from under the terrace door, Valley Forge would not provide coverage under the policy. *See* Doc. #52-4 at 6; Doc. #52-3 at 62-63 (27:15-28:4) (Allen's deposition testimony, stating that only the "surface water" language in the Water Exclusion was applicable to A Priori's claim, despite the denial of coverage letter's more broad language and inclusion of the whole Water Exclusion).

Valley Forge also maintained that its reliance on the Water Exclusion was "not intended in any way to be exhaustive or exclusive" and that it reserved the right to "raise additional policy terms and conditions as defenses to coverage." Doc. #52-4 at 6; Doc. #51-1 at 5-6 (¶ 20). Allen later clarified that he understood the water to have entered the building "under the terrace door as a result of the roof drain not being able to handle the volume of rain water that came down," and that such water "is classified as surface water" and that loss caused by surface water is excluded under the policy. Doc. #52-4 at 2.

After A Priori asked Allen to reconsider the denial, Allen invoked the policy's Rain Limitation. Doc. #52-4 at 14; Doc. #52-3 at 81-82 (95:19-96:6). That provision states that no coverage is provided for loss or damages to the "'interior of any building or structure' or to personal property in the building or structure, caused by rain, snow sleet or ice whether driven by wind or not." Doc. #52-2 at 33.

A Priori sent a letter disputing the applicability of the Rain Limitation, but Valley Forge adhered to its denial. Doc. #51-1 at 11 (¶ 40). Later, in October 2023, A Priori sent an email to Valley Forge, advising that the second-floor tenant was filing a claim against A Priori for the water damage that tenant had sustained from water that leaked through A Priori's office to the second floor's ceiling. *Id.* at 11 (¶¶ 41-42); Doc. #52-4 at 17. A Priori's email suggested that it

would make a liability claim under the policy—but it did not formally initiate such a claim. *See* Doc. #52-4 at 17.

A Priori filed suit to challenge Valley Forge's coverage denial. Doc. #51-1 at 11 (¶ 44). Count One alleges breach of contract; Count Two alleges a breach of the covenant of good faith; Count Three alleges violations of the Connecticut Unfair Trade Practices Act (CUTPA) and the Connecticut Unfair Insurance Practices Act (CUIPA); and Count Four seeks a declaratory judgment that the policy provides coverage and that no exclusion or limitation applies. Valley Forge now moves for summary judgment on all counts and A Priori cross-moves for summary judgment on Counts One and Four.

## STANDARD OF REVIEW

The standard under which courts review motions for summary judgment is well established. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," while a dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[4] Once the movant meets his burden, the nonmoving party "must set forth specific facts demonstrating that there is a genuine issue for trial." *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)). At the summary judgment stage the judge's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (*per*

---

[4] Unless otherwise indicated, this ruling omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

*curiam*) (quoting *Anderson*, 477 U.S. at 249). In other words, "[a]t the summary judgment stage, [a] district court is not permitted to make credibility determinations or weigh the evidence." *Kee v. City of New York*, 12 F.4th 150, 166 (2d Cir. 2021) (citing *Anderson*, 477 U.S. at 255).

## DISCUSSION

Because this is a diversity case, the Court applies Connecticut substantive law.[5] *See Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138, 142 n.2 (2d Cir. 2013) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938) ("*Erie* has become synonymous with the familiar aphorism that federal courts sitting in diversity apply state substantive law and federal procedural law.")).

A few principles of Connecticut contract law therefore warrant review. Under Connecticut law, "[t]he elements of a breach of contract claim are the formation of an agreement, performance by one party, breach of the agreement by the other party, and damages." *Karas v. Liberty Ins.*, 33 F. Supp. 3d 110, 114 (D. Conn. 2014) (citing *Meyers v. Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C.*, 311 Conn. 282, 291 (2014)). Next, "[c]onstruction of a contract of insurance presents a question of law for the court." *Connecticut Dermatology Grp., PC v. Twin City Fire Ins.*, 346 Conn. 33, 41 (2023). Such a contract "is to be interpreted by the same general rules that govern the construction of any written contract and enforced in accordance with the real intent of the parties as expressed in the language employed in the policy [and] [t]he policy words must be accorded their natural and ordinary meaning." *Pac. Indem. Ins. v. Aetna Cas. & Sur. Co.*, 240 Conn. 26, 29-30 (1997).

---

[5] Although the definition of the terms and provisions at issue in this case are questions of Connecticut common law, "the very existence of diversity jurisdiction rests on a presumption that federal courts are competent to decide questions of state law." *Shields v. Murdoch*, 891 F. Supp. 2d 567, 584-85 (S.D.N.Y. at 2012); *see also Curry v. Palmetto Surety Corp.*, 2024 WL 1330079, at *5 (D. Conn. 2024) (explaining that a federal court sitting in diversity may address unsettled areas of state law and, in so doing, may rely on decisions from other jurisdictions on the same or analogous issues).

Significantly, the Court "must look at the contract as a whole, consider all relevant portions together and, if possible, give operative effect to every provision in order to reach a reasonable overall result." *Arrowood Indem. Co. v. King*, 304 Conn. 179, 193 (2012) (quoting *Johnson v. Connecticut Ins. Guar. Ass'n*, 302 Conn. 639, 643 (2011)). And as with most jurisdictions, the language of contracts is interpreted according to its common and ordinary meaning. *See Birkhold v. Birkhold*, 343 Conn. 786, 795 (2022) (explaining that the "language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract.").

Additionally, "if the terms of a policy are ambiguous . . . any ambiguity must be construed in favor of the insured and against the insurer." *Hartford Fire Ins. v. Moda, LLC*, 346 Conn. 64, 75 (2023). However, "the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous." *Aetna Cas. & Sur. Co.*, 240 Conn. at 30 (citation omitted). Nonetheless, "when the words of an insurance contract are, without violence, susceptible of two equally reasonable interpretations, that which will sustain the claim and cover the loss must, in preference, be adopted." *R.T. Vanderbilt Co. v. Cont'l Cas. Co.*, 273 Conn. 448, 462 (2005). Finally, the Court will not "torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity." *Hammer v. Lumberman's Mut. Cas. Co.*, 214 Conn. 573, 584 (1990).

### *Count One and Count Four—Breach of Contract and Declaratory Relief*

A Priori asserts in Count One that Valley Forge breached the insurance policy by denying the claim for their covered losses. In Count Four, A Priori seeks a declaratory judgment that the policy provided coverage and that coverage was not excluded or otherwise limited under the policy. In seeking summary judgment, A Priori asserts there is no genuine issue of material fact

that the policy provides coverage for the property damage at issue. Valley Forge, in seeking summary judgment on Counts One and Four, argues the opposite. Neither party argues that there are issues of fact precluding summary judgment as to Counts One and Four and agree that the Court can decide the coverage issue on the present record.

The policy at hand is an "all-risk policy," meaning it provides coverage for loss unless a certain exclusion or limitation applies. *See* Doc. #52-2 at 33. Valley Forge insists that certain exclusions and limitations apply in this case—namely the Water Exclusion, the Weather Exclusion, the Negligent Work Exclusion, and the Rain Limitation. Each is addressed in turn.

*Water Exclusion*

Under the Water Exclusion the policy does not cover losses resulting from "'[f]lood,' surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not."[6] At issue here, the parties agree, is the term "surface water." Doc. #51-1 at 6 (¶¶ 22-23). Valley Forge argues that because the rainwater pooled on the third-floor terrace before entering the building, the rain became "surface water," as that term is contemplated under the policy. Doc. #45 at 7. A Priori argues that "surface water" means water on or near the earth's surface, not water gathering on rooftops terraces or other raised structures. Doc. #52 at 12-13.

As discussed above, the interpretation of a contractual term is a legal question, and therefore one fit for courts to decide at summary judgment. *See, e.g.*, *Shutterfly Lifetouch LLC v. Rosa*, 718 F. Supp. 3d 155, 159 (D. Conn. 2024). Importantly, in noting that "[t]here is candidly

---

[6] The Exclusions provision states: "We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss . . . . (g) Water: (1) 'Flood,' surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not." Doc. #52-2 at 35.

7

split persuasive authority with respect to the interpretation and application of the water exclusion" at issue here, Valley Forge has arguably conceded that this term is ambiguous. Doc. #45 at 7. While not dispositive, the existence of competing case law interpretations of the term is noteworthy, although the language of the policy itself controls.

Here, the policy does not define the term "surface water"—a term which is, on its own, unclear. In fact, neither party has identified any case under Connecticut law holding that the water on the terrace in this case is properly characterized as surface water. In a clearly analogous case, the Superior Court held that water accumulated on a *rooftop* is not surface water. *See Union St. Furniture & Carpet, Inc. v. Peerless Indem. Ins.*, 2012 WL 5519614 (Conn. Super Ct. 2012). The court specifically noted that "[c]ases and authorities in general agree that surface water *includes* water from precipitation (rain or snow) *flowing on the ground* outside of any defined channel." *Id.* at *3 (emphasis added). This does not exclude the pooled *terrace* water from being "surface water," but it lends support to A Priori's argument.

Valley Forge relies heavily on *Fidelity Co-operative Bank v. Nova Casualty Co.*, in which the First Circuit, applying Massachusetts law, held that pooled water on the roof of a property or water that has accumulated "on artificial surfaces" is "surface water." 726 F.3d 31, 40 (1st Cir. 2013). This conclusion, however, was recently rejected by the Supreme Judicial Court of Massachusetts. *See Zurich Am. Ins. v. Med. Props. Tr., Inc.*, 494 Mass. 382 (2024). In answering a certified question regarding whether accumulated water on parapet roofs or on courtyard rooftops unambiguously constitutes "surface water" under Massachusetts law, the court conducted an expansive review of authority on this issue, *id.* at 390-94, after which it concluded that the case law "reveals no consistent interpretation of whether surface waters

8

include rainwater accumulated on a roof."[7] *Id.* at 391. As relevant here, the court observed that the "basic point of disagreement is the importance of the requirement that the water be on the ground to constitute surface water." *Id.* at 391-92. Accordingly, the Massachusetts Supreme Judicial Court concluded: "two different reasonable interpretations of the term 'surface waters' emerge, a broader interpretation that includes rainwater accumulating on a roof . . . and a [narrower] interpretation that would exclude water not on the ground or the surface of the earth." *Id.* at 394; *see id.* at 392-94 (collecting cases).

The case law, in short, reflects that multiple courts across jurisdictions have either disagreed about the definition of the term "surface water" or held the term to be ambiguous under state law for the purposes of insurance policies like the one here. This Court will add its voice to the chorus of courts that find the term ambiguous.

Each party offers a reasonable interpretation of the term. The first, which A Priori champions, is that water must be on the ground's surface to be "surface water"; the second, touted by Valley Forge, is that water need not be on the earth's surface to properly be labeled "surface water." As the *Zurich* court explained, this disagreement "flows naturally" from the ambiguity inherent in the term. 494 Mass. at 394. Accordingly, the term is construed in favor of coverage and the Water Exclusion therefore does not apply.

*Weather Exclusion*

The Weather Exclusion bars coverage for any "loss or damage caused by or resulting from . . . [w]eather conditions," but only if such conditions "contribute in any way with a cause

---

[7] The certified question was as follows: "Whether rainwater that lands and accumulates on either (i) a building's second-floor outdoor rooftop courtyard or (ii) a building's parapet roof and that subsequently inundates the interior of the building unambiguously constitutes 'surface waters' under Massachusetts law for the purposes of the insurance policies at issue in this case?" *Zurich Am. Ins. v. Med. Props. Tr., Inc.*, 88 F.4th 1029, 1035 (1st Cir. 2023).

9

or event excluded under Paragraph B.1 above to produce the loss or damage." Doc. #52-2 at 39. Valley Forge argues that if rainwater entered the building because of the building's wear and tear,[8] "any loss caused by the rainwater entering the building" is not covered. Doc. #51 at 12. The Court disagrees.

The Weather Exclusion contains a concurrent causation requirement. The policy provides: "But this exclusion only applies if weather conditions contribute in any way *with a cause or event excluded in Paragraph B.1* above to produce the loss or damage." Doc. #52-2 at 39 (emphasis added). Thus, the weather exclusion applies only if another exclusion set forth in Paragraph B.1 of the policy also applies. Here, the only possible exclusion under Paragraph B.1 that might arguably apply is the surface water provision of the Water Exclusion. As the Court has already concluded that the Water Exclusion does not apply, it necessarily follows that neither does the Weather Exclusion.

*Negligent Work Exclusion*

This exclusion bars coverage for any loss or damage caused by "[f]aulty, inadequate or defective . . . [d]esign, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction . . . of part or all of any property on or off the [insured] premises" *unless* a fault or an inadequate or defective design "results in a Covered Cause of Loss."[9] This is an

---

[8] Valley Forge puts forth only conclusory assertions that the water made its way into A Priori's office because of the building's "wear and tear," which is entirely uncertain on the present record. Valley Forge argues alternatively that shoddy workmanship or poor drain design in the construction of the terrace doors was the cause of the damage.

[9] The provision states: "We will not pay for loss or damages caused by or resulting from any of the following Paragraphs a. through c. But if an excluded cause of loss that is listed in Paragraphs a. through c. results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss." Paragraph c., titled "Negligent Work," states in its entirety: "Faulty, inadequate or defective: (1) Planning, zoning, development, surveying, sitting; (2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction; (3) Materials used in repair, construction, renovation or remodeling; or (4) Maintenance; of part or all of any property on or off the described premises. If an excluded cause of loss that is listed in Paragraphs (1) through (4) above results in a Covered Cause of Loss, we will pay for the resulting loss or damage caused by that Covered Cause of Loss. But we will not pay for: (1) Any cost of correcting or making good the fault, inadequacy or defect itself, including any cost incurred to tear down, tear out, repair or replace any part of any property to correct the

"ensuing loss" provision. An ensuing loss clause "is an exception to a policy exclusion that ensures that if one of the specified uncovered events takes place, any ensuing loss which is otherwise covered by the property insurance policy will remain covered; the uncovered event itself, however, is never covered." *Viking Constr., Inc. v. 777 Residential, LLC*, 190 Conn. App. 245, 262 (2019) (quoting 11 STEVEN PLITT ET AL., COUCH ON INSURANCE § 153:2, 153-11 n.8. (3d ed. rev. 2017)). "The insured has the burden of proving that an exception to an exclusion reinstates coverage." *Id.* (quoting *Capstone Bldg. Corp. v. Am. Motorists Ins.*, 308 Conn. 760, 788 n.24 (2013)). Thus, a covered loss that "ensued" from an excluded cause of loss is still covered under insurance policies. *Id.*; *see also Beach v. Middlesex Mut. Assurance Co.*, 205 Conn. 246, 251-52 (1987). In other words, if the faulty, inadequate, or defective work results in a covered loss, *i.e.* property damage, then that resulting loss or damage is paid for—but the "cost of correcting or making good the fault" that led to the covered loss is not.

      Valley Forge argues that the damage to A Priori's office was "contributed by the defective design of the roof drain system of the roof as well as the defective design and construction of the terrace door," and that as a result, "A Priori's claim is not eligible for coverage." Doc. #51 at 11. But this argument misreads the plain text of the policy and misunderstands A Priori's claim. Even if the drains or the terrace door were indeed defective at the time of the storm and contributed to the damage, A Priori is not requesting coverage for the cost of "making good" those defects, *i.e.*, the drains or the terrace door. Its claim is solely for the

---

fault, inadequacy or defect; or (2) Any resulting loss or damage caused by a Covered Cause of Loss to the property that has the fault, inadequacy or defect until the fault, inadequacy or defect is corrected." Doc. #52-2 at 39.

11

cost of the "Covered Cause of Loss" that resulted from those defects: water damage to the interior of its building. Therefore, the Negligent Work Exclusion does not apply.

*Rain Limitation*

Valley Forge also relies upon a rain limitation identified in the policy which provides that the policy will not cover "loss of or damage to . . . [t]he 'interior of any building or structure' or to personal property in the building or structure, caused by rain, snow, sleet or ice whether driven by wind or not" unless the building "first sustains actual damage to the roof or walls by the wind or hail and then we will pay only for the loss to the 'interior of the building or structure' or the personal property in the building or structure that is caused by rain, snow, sleet, sand or dust entering the building[] or structure[] through openings in the roof or walls made by direct action of wind." Doc. #52-2 at 33.[10]

As a threshold matter, the parties dispute whether this provision is a coverage provision that defines the parameters of coverage or an exclusion provision that removes certain losses from the scope of coverage. *See* Doc. #45 at 4-5; Doc. #52 at 5. Valley Forge asserts it is the latter and that therefore A Priori bears the burden of proving that it does not apply; A Priori contends it is an exclusion and that the burden lies with the insurer. The Court agrees with A Priori. The Court recognizes that under certain circumstances a limitation in a policy may be distinct from an exclusion in the same policy, *see, e.g.*, *Lighton Indus., Inc. v. Allied World Nat'l Assurance Co.*, 348 F. Supp. 3d 167 (E.D.N.Y. 2018),[11] but this is not such a circumstance. The

---

[10] The "Limitations" provision states: "a. We will not pay for loss of or damage to: (1) The 'interior of any building or structure' or to personal property in the building or structure, caused by rain, snow, sleet or ice whether driven by wind or not, unless: (a) The building or structure first sustains actual damage to the roof or walls by wind or hail and then we will pay only for the loss to the 'interior of the building or structure' or the personal property in the building or structure that is caused by rain, snow, sleet, sand or dust entering the building(s) or structure(s) through openings in the roof or walls made by direct action of wind; or (b) The loss or damage is caused by or results from thawing of snow, sleet, or ice on the building or structure." Doc. #52-2 at 33.

[11] In *Lighton Industries*, the court, applying New York law, held that a classification limitation contained in a policy

12

language of the provision clearly excludes certain losses from coverage—and "[l]anguage in a policy purporting to exclude certain events from coverage will be construed most[] strongly against the insurer." *Sonson v. United Servs. Auto. Ass'n*, 152 Conn. App. 832, 838 (2014); *see also Mashantucket Pequot Tribal Nation v. Factory Mut. Ins.*, 224 Conn. App. 429, 467 (2024) ("[A]n exclusion is a provision which eliminates coverage where, were it not for the exclusion, coverage would have existed."). Indeed, the policy itself identifies that which is covered as being subject to both *limitations* and exclusions contained within the policy. The "Covered Causes of Loss" provision states that the policy covers "RISKS OF DIRECT PHYSICAL LOSS *unless the loss is*: (a) Excluded in section B. EXCLUSIONS; (b) *Limited in paragraph A.4. Limitations*; or (c) Excluded or limited by other provisions of this policy." Doc. #52-2 at 33.

      Turning to the merits, the Court concludes that the Limitation does not preclude coverage for the losses at issue here. The policy defines the "interior of any building or structure" as "all portions of the structure that are *within the exterior skin of the structure's walls and roof*, including, but not limited to lathe, sand paper, framing, wallboard and tarpaper." Doc. #52-2 at 52 (emphasis added). In other words, this definition covers only those materials that are quite literally within a structure's walls and roof—that is, the contents of the "skin" of the building but not the contents of the building itself. *See* Doc. #52 at 6-7. Because the damage to A Priori's

---

endorsement was not an exclusion as it defined the parameters of coverage in the first instance. The endorsement provided: "This insurance *applies only to* 'bodily injury,' 'property damage' and/or 'personal and advertising injury" resulting from [specified activity]" *Id.* at 176 (emphasis added). The policy language at issue here has no similar language.

office is not damage to the "interior of the building" as defined in the policy, but rather to interior flooring and fixtures, the Limitation does not apply.

Additionally, the damage at issue was not *directly* caused by rain entering the office, which is what the language of the Rain Limitation clearly contemplates. That is, "rain, snow, sleet, sand or dust" did not fall directly on the damaged area because, for example, someone left a window or door open. Rather, rainwater pooled on the terrace, and that pooled water later led to the damage to the office. A Priori therefore argues that the distinction between *precipitation* directly falling on insured property and *water* seeping into the property must be maintained because, without the distinction, the policy's Water and Weather Exclusions would become superfluous. The Court agrees. If all damages flowing from precipitation-related events could be excluded under the Rain Limitation (except for the limited coverage permitted therein), the Water and Weather Exclusions would serve no purpose—and such an interpretation would be contrary to principles of contract construction. *See Centerplan Constr. Co. v. City of Hartford*, 343 Conn. 368, 392 (2022) ("[T]he law of contract interpretation . . . militates against interpreting a contract in a way that renders a provision superfluous.").

Finally, the Court rejects Valley Forge's assertion that A Priori's argument in this regard is "undermined by the option to [purchase] the Broadened Wind Endorsement." Doc. #51 at 12. This is no argument at all, because the policy "covers what it covers," and there is "[n]o rule of

construction [that] operates to eliminate coverage simply because similar protection may be available through another insurance product." *Capstone*, 308 Conn. at 791.

Because none of Valley Forge's relied-upon exclusions or limitations apply to bar coverage in this case, the Court concludes that A Priori is entitled to summary judgment on Counts One and Four.

### *Count Two—Covenant of Good Faith*

Valley Forge has moved for summary judgment on A Priori's claim that it breached the duty of good faith. A Priori alleges that Valley Forge did not conduct a proper investigation into its insurance claim. *See* Doc. #52 at 22-24. It also contends that Valley Forge's denial of coverage was vaguely explained and that it improperly relied "on entirely different and previously unreferenced exclusions to justify" the denial after A Priori requested reconsideration. Doc. #10 at 12 (¶ 68).

Connecticut law implies into every contract—including contracts for insurance—a covenant of good faith and fair dealing. *See*, *e.g.*, *Macomber v. Travelers Prop. & Cas. Corp.*, 261 Conn. 620, 638 (2002); *Heyse v. Case*, 114 Conn. App. 640, 652-53 (2009). To establish a bad faith claim, a plaintiff must demonstrate that a defendant's conduct was undertaken "with a design to mislead or deceive another or by some interested or sinister motive." *Connecticut Mun. Elec. Energy Coop. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 2020 WL 6888272, at *12 (D. Conn. 2020) (quoting *De La Concha of Hartford, Inc. v. Aetna Life Ins.*, 269 Conn. 424, 433 (2004)). "Bad faith is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity . . . it contemplates a state of mind affirmatively operating with furtive design or ill will." *Buckman v. People Express, Inc.*, 205 Conn. 166, 171 (1987); *see also Chapman v. Norfolk & Dedham Mut. Fire Ins.*, 39 Conn.

App. 306, 320 (1995); *Raspberry Junction Props., LLC v. Edwards Family P'ship*, 2021 WL 4460285, at *7-8 (D. Conn. 2021) (quoting *De La Concha*, 269 Conn. at 432-33).

Although an investigation is "necessary to assess the duty to defend or indemnify under [a] policy, a bad faith cause of action is properly addressed to the insurer's conduct depriving the insured of [their] contractual benefits, rather than the precedent, investigatory step." *Capstone*, 308 Conn. at 797; *see also McCulloch v. Hartford Life & Accident Ins.*, 363 F. Supp. 2d 169, 177 (D. Conn. 2005) ("Allegations of a mere coverage dispute or negligent investigation by an insurer will not state a claim for bad faith."). And when a denial of a claim is "fairly debatable, i.e., if the insurer had *some arguably justifiable reason* for refusing to pay or terminating the claim," a plaintiff cannot recover for bad faith. *McCulloch*, 363 F. Supp. 2d at 177 (emphasis added).

Here, even when viewing the facts in the light most favorable to A Priori, it is clear that Valley Forge had an "arguably justifiable reason," albeit incorrect, for denying coverage. And the record is replete with evidence that Valley Forge undertook action to process and investigate A Priori's property damage claim.[12] In doing so, Valley Forge relied upon information provided by A Priori through A Prior's counsel. In short, A Priori has failed to demonstrate even a genuine issue of disputed fact as to whether Valley Forge acted with the requisite dishonest purpose or moral obliquity in denying coverage.[13]

---

[12] *See, e.g.*, Doc. #52-3 at 43-51 (notes from the claim, evidencing attorney discussions between the parties, review of the policy and documentation and photos of the damage sent between the parties related to the claim, etc.); Doc. #52-4 at 1-4 (emails between the parties evidencing requests from Allen to Nagayama for more information and photos of the damage); *id.* at 13 (same); Doc. #52-3 at 58:1-12 (deposition of Allen, explaining that his decision was "based on the information that the insured had provided to us"); *id.* at 65:6-9 (deposition of Allen, testifying that there was "no indication that there was any type of workmanship or craftsmanship based on the information that had been provided to me by the insured" in the context of the Negligent Work Exclusion.).

[13] The Court also readily rejects A Priori's claim of bad faith arising out of Valley Forge's reliance on several exclusions in the policy after first relying solely on the Water Exclusion. Valley Forge's initial letter denying coverage made clear, in no uncertain terms, that the "listed coverage issues and views are not intended in any way to

The Court therefore grants Valley Forge's motion for summary judgment as to Count Two.

### *Count Three—CUTPA/CUIPA*

A Priori alleges that Valley Forge's conduct "in purporting to provide coverage but then refusing to provide it" constitutes violations of the Connecticut Unfair Insurance Practices Act and the Connecticut Unfair Trade Practices Act. Doc. #10 at 12-13 (¶¶ 71-79). Valley Forge moves for summary judgment, arguing that A Priori has not established a genuine dispute of material fact relating to whether Valley Forge "has committed the alleged proscribed act with sufficient frequency to indicate a general business practice." Doc. #45 at 12 (quoting *Karas*, 33 F. Supp. 3d at 117).

CUTPA prohibits the use of "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(a). It further provides for a private right of action. Conn. Gen. Stat. § 42-110g(a). CUIPA, in turn, "prohibits unfair business practices in the insurance industry and defines what constitutes such practices in that industry," but it "does not authorize a private right of action." *Artie's Auto Body, Inc. v. Hartford Fire Ins.*, 317 Conn. 602, 623 (2015) (citing Conn. Gen. Stat. § 38a-816). The Connecticut Supreme Court has determined, however, "that individuals may bring an action under CUTPA for violations of CUIPA." *Id.* "Because CUIPA provides the exclusive and comprehensive source of public policy with respect to general insurance practices . . . unless an insurance related practice violates CUIPA or, arguably, some other statute regulating a specific type of insurance related conduct, it cannot be found to violate any public policy and, therefore, it cannot be found

---

be exhaustive or exclusive, and we expressly reserve all of our rights under the Policy, *including but not limited to the right to raise additional policy terms and conditions as defenses to coverage*, as appropriate, including in response to any additional information [A Priori] may present." Doc. #52-4 at 6 (emphasis added).

to violate CUTPA." *State v. Acordia, Inc.*, 310 Conn. 1, 37 (2013); *accord Artie's Auto Body, Inc.*, 317 Conn. at 624 ("[A]s a general rule, a plaintiff cannot bring a CUTPA claim alleging an unfair insurance practice unless the practice violates CUIPA."). As a result, "the failure of [a] CUIPA claim is fatal to [a] CUTPA claim." *Artie's Auto Body, Inc.*, 317 Conn. at 624.[14]

A claim relating to an insurer's settlement practices "requires proof that the unfair settlement practices were committed or performed with such frequency as to indicate a general business practice." *Lees v. Middlesex Ins.*, 229 Conn. 842, 847-48 (1994); *see also* Conn. Gen. Stat. § 38a-816(6). Connecticut courts have interpreted the words "with such frequency" to mean that more than a single instance of an unfair settlement practice is required for a successful CUIPA claim—but they have also noted that the same words "do[] not mean that a single additional act is sufficient." *Harrigan v. Fid. Nat'l Title Ins.*, 214 Conn. App. 787, 819 (2022). No precise number of incidents is required, and courts instead must look to the facts of each case and examine the evidence presented. *Id.* at 819-20; *see also Belz v. Peerless Ins.*, 46 F. Supp. 3d 157, 165-66 (D. Conn. 2014).

Valley Forge argues that there is insufficient evidence to raise even a question of disputed fact as to whether Valley Forge engaged in any prohibited general business practice. A Priori does little to refute this assessment of the record. The operative complaint makes the conclusory allegation that Valley Forge has caused "substantial injury to businesses in Connecticut"—but it does not name the affected businesses, nor state how Valley Forge's allegedly unfair claims settlement practices are utilized frequently enough to constitute a general business practice. Doc. #10 at 13 (¶ 76). The evidence developed through discovery adds little or nothing to the claim.

---

[14] In *NEMS, PLLC v. Harvard Pilgrim Health Care of Connecticut, Inc.*, 350 Conn. 525 (2024), the Connecticut Supreme Court cast substantial doubt as to whether statutes other than CUIPA can form the basis of a CUTPA claim, as was suggested in *dicta* in *Accordia*.

The record evidence includes only a single coverage denial. That is plainly insufficient to get this CUTPA/CUIPA claim to a jury.

Furthermore, A Priori's allegation that it made an additional claim for liability under the policy for water damages that arose in the building's second-floor office does not change this result. Doc. #51-1 at 11 (¶ 41). The record evidence reveals that A Priori sent an email to Valley Forge explaining that the second-floor tenant was "trying to file a claim against A Priori" and that it wanted to put Valley Forge "on notice of this additional detail." Doc. #52-4 at 17. But there is no other evidence demonstrating that a formal claim was made that might have triggered Valley Forge's duty to indemnify A Priori. But even if such a claim had been made, this is still a singular coverage dispute between an insurer and its insured, arising from a single event (a storm) that damaged the insured's property. Whether the property damage provisions were triggered or the liability coverage provisions were triggered is inconsequential. And a single event and the response thereto does not a general business practice make.

## Conclusion

For the reasons set forth above, Defendant's [45] motion for summary judgment is GRANTED as to Counts Two and Three and DENIED as to Counts One and Four. Plaintiffs' [46] motion for summary judgment as to Counts One and Four is GRANTED. The Clerk of the Court is directed to enter judgment in favor of the Plaintiffs on Counts One and Four and in favor of the Defendant on Counts Two and Three and to thereafter close this case.

It is so ordered.

Dated at Bridgeport this 25th day of April 2025.

/s/ *Kari A. Dooley*
Kari A. Dooley
United States District Judge